UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

23- 205

Melvin C. Graham

  V.

THE STATE OF NEW HAMPSHIRE,  ⌊Enter Demand for Jury Trial⌋

   ET AL

  This suit in Equity is based on violations of Graham's Constitutional rights, pursuant to 42 USC @ 1983, and @1985 due to Conspiracy in a trial court in Rockingham County Superior Court in Januuary 1996. Graham also invokes 18 USC @ 1343 to assist in the explantion of "Conspiracy."

<u>UNDISPUTED FACTS</u>

  Graham filed a State Habeas Corpus Petition in Merrimack County Superior Court, Docket #217-2020-CV-253 in which ~~the conspiracy which~~ the Conspiracy Claim was brought to the attention of The State, and The State had no Substantive argument for. Basically, without detailing the entire case of conspiracy, it was alleged and then proven to be factual assertions that were made. However, The Judge did not make a decision that would vilify The State Supreme Court (hereafter referred to as "The Court" for Misfeacance in Office) because of "The Court" using a facially sound Rule of "The Court" to deny Graham's Access to "The Court" for adjudication on all Constitutionally valid, Meritorious claims made in Post-Conviction and denied by The Superior Courts in Rockingham, Merrimack, Coos, Courts with untenable and unsustainable decisions.. This particular Rule is Rule 7(1) and it is used in a manner that is Unconstitutional. As was explained in The aforementioned Habeas Corpis Petition, "The Court" uses this Judge made rule to deny access to "The Court", which is explained

1

and supported by facts in the afore mentioned Habeas Corpus which
is proffered by reference and available to to all state actors who
participated in the original conspiracy or have contributed to it
by "Furtherance"of the conspiracy.  The Judge that presided over
the habeas Corpus Petition wrote in his opinion,that ultimately
dismissed the petition that Graham,had merirtorious claims, although
not in those words. His ~~~~ dictum was that the State would be pred-
judiced by a retrial because of the passage of so much time.  The
time factor should have no bearing on the case at hand because "The
Court is to blame for the lapse in time, not Graham. The challenged
Rule 7(1) is the cause of the predjudice, because it enables "The
Court" to further the conspiracy, whether they realize it or not.

The Conspiracy to Convict by taking away Graham's Civil Rights
by Overt Acts and Omissions was displayed in the Habeas Petition;
there were collusive acts that were developed into Conspiratorial
Acts , and an ageement between The Judge, Prosecutor, and two Pub-
lic Defenders. A page from the Trial Transcript showed the Defense
Attorney/Public Defender telling the judge, in his opening argument
that "We are not going to get into the Medical Evidence, because
the prosecutor doesn't want to." That demonstrated collusion, and
the judge gave his tacit approval.  The Evidence the attorney was
speaking of was three exculpatory Doctors Reports of Examinations
of two girls Graham had been accused of having sexually assaulted.
The first one was an examination of B.M. on 10-17-1994, and the
alleged assaults occured on 10-14-1994. This reort proclaimed that
there were no signs of any assaults, and stated the hymen was in-
tact. there were other notable facts presented, but because of a
conspiracy, the facts were never shown to the jury.

2

The 2nd Report of an examination of the same girl, but by a different Doctor was made three weeks later on 11-4-1994. This report was made by Dr. Gwendolyn Gladstone, a highly qualified Pediatrician who has testified in many trials as an Expert Witness for The State. Doctor Carolyn Thumser was the Doctor that first examined the alleged victim, B.M. and found the hymen was in tact, and everything was normal, however The Gladstone Report disclosed that the hymen was completely worn away, so where did it go, who wore it away? These are questions that should have been brought to trial for a jury to decide, whether Graham was guilty or not, but the co-conspiritors had decided not to introduce the jury to the medical evidence which was conclusive in finding Graham was not the perpetrator of the charged assaults. The jury did hear evidence from a prosecution witness that Graham had left The State of N,H. on 10-17-1994, so obviously he was not responsible for the missing Hymen. If The Public Defenders had put the Reports into evidence and let the jury do its job, there would have been no conviction because in the third report there were disclosures that would have corroborated Graham's trial testimony of what actually happened on the infamous night of October 14, 1994.

The failure to put the three (3) Documented Reports into evidence so that the jury could determine guilt or innocence of the Defendant constituted Ineffective Assistance of Counsel under the 6th Amendment of The U.S. Constitution, and Artical 15 of The N.H. State Constitution, and most certainly establishes Graham's right to sue in The U.S. District Court for Equitable relief.

The third Doctors Report contained information regarding a second alledged victim who by all standards of common sense would have made her an "eye witness" to the alleged assaults of B.M. because the indictments for S.R. were identical to the indictments for B.M..However The indictments pertaining to B.M were nol prossed just minutes before the start of the trial, probably because the girls weren't telling the same story, and it is noteworthy that in The Appeal of Right, "The Court" said that S.R. could not corroborate any of B.M.'s trial testimony. The 3rd Report was also made by Dr. Gladstone, on the same day as her examination of B.M.  The alledged victims were purportedly brought to Dr. Gladstone's office because The State had discovered that the defendant Graham suffers from Herpes Simplex Virus, so The State used this opportunity to attempt a "Coup de grace" in the prosecution of Graham. Gladstone had ran several tests for Herpes Simplex Virus (HSV) as well as many other Sexually Transmitted Diseases (STD's) and all tests were negative. The Doctor told S.R.'s mother that she didn't think it was necessary to do any tests for STD's on S.R. As stated previously, the indictments were for both girls, the same time, place, and manner, so it would seem suspicious to this Petitioner that if The Doctor knew anything at all about STD's she would not be so reluctant to test both alledged victims for HSV and other STD's. It is just supposition because I have no proof yet, but in my search for justice  I have a legitimate claim that Dr. Gladstone wrote a false Report about the hymenal tissue of B.M. or B.M. was assaulted while she was in the custody of The State. Hopefully This Honorable Court will allow this petition to proceed, with full discovery rights so that it may be determined what the truth is.

4

Another point of interest in this court will be that the Coconspi-
rators met four times to discuss critical issues for the defense,
and Graham, the defendant was excluded from all four, which by
law violated the right to be present, as they were all discuss-
ions about the Exculpatory Medical Evidence.This was very much a
violation of Graham's Due Process Rights. Also these clandistine
meetings is probably where the strategy of the conspiracy was de-
veloped and where there was a meeting of the minds, and an agree-
ment to deny Graham's Constitutionally protected Due Process, and
Equal Protection Rights. The last time they met and excluded The
Defendant was on the 2nd day of trial. The State filed a Motion-
In-Limine that morning seeking to exclude a witness for the defense
from testifying. The State had plenty of time before the trial had
begun to file its motion, but realized they had not made a very
good case against Graham, and that Graham would tell the jury the
truth of what transpired on October 14, 1994, as well as a proc-
lamation that he had an active outbreak of HSV on the night in
question and could not have committed the charged assaults because
of the pain it would have caused him personally. The judge held a
hearing on the motion in chambers and Graham was excluded. The
witness for the defense was going to tell the jury that she had
observed the herpes sores on Graham's penis and her proffered
testimony was that the sores were swollen and looked to be very
painful, and that some of them were "crusted over". The judge in
a haste to protect the conspirators made a ruling to grant The
States Motion on the grounds that what the witness claimed to have
seen was two or three days after the assaults, and irrelevant.

This was an issue that was raised in three Habeas Corpus Pet-
itions in The State, as a very critical stage of trial because of
The Defendant Graham having a very good understanding of HSV, his
Attorney's ignorance of it. If Graham had been present at the hear-
ing, he would have pointed out the time factors in a HSV outbreak
and the healing process, and in particular that any sores that are
"crusted over" would have been there for a while, at least two or
three days previously. Its just plain common sense, and if the jury
had been allowed to determine the facts as given to them, Graham
would have been acquited. It was an egregious, flagrant, denial
of Due Process. As previously stated there were three Petitions
in the state courts on this very claim, and also a Petition for
"Original Jurisdiction in The State Supreme Court. "The Court"
refused to take jurisdiction and the Superior  Court judges were
deterimned to protect one of their own, and made unreasonable de-
cisions to deny Habeas Corpus relief, and "The Court" would not
accept appeals on the subject. Actually "The Court" has declined
every appeal on Constitutionally valid and meritorious claims made
by Graham. Graham has a stack of Declination of acceptance notices
on every claim he has made in post-conviction. "The Court" has
no explanation for this phenonon other than that The Court finds
the claims to be undesirable for their consideration. So whether
"The Court" realizes it or not, they "Further" the conspiracy by
overtly ignoring the mandated duty to correct errors and abuses
in the lower courts. Rule 7(1) is hereby challenged as as Uncons-
titutional because of the way it is used by "The Court"

The Rule 7(1) is Constitutional on the face, but it is used in a Unconstitutional manner by "The Court". It is used to decline appeals and "The Court" supposedly uses "sound Judicial Discretion" in deciding whether or not to accept or decline an appeal. However, "The Court" abuses that Discretion when they seriatimly decline every appeal from Graham with valid, meritorious Constitutional Questions raised in the appeal.

Take for example, the last State Habeas Corpus Petition filed by Graham and the ensuing appeal. Four (4) Valid Claims were considered by the Merrimack County Superior Court, all proven by the record (1) the trial court conspiracy, (2) Conflict of Interest in the appeal of right, (3) Structurally Altered appeal, and (4) The Furtherance of Conspiracy by "The Court". One would think that if the justices used "sound judicial discretion, they would have been inclined not to decline, so they could preserve their dignity by a simple explanation of why there should be no relief for Graham in Habeas Corpus. Apparently "The Court" realized that The Justices sitting on the bench in 1996 had opened up a can of worms for the future Justices to contend with. However, the Justices appointed since 1996 have all decided to keep the conspiracy alive by being Misfeasant in Office and seriatimly decling all appeals from the defendant Graham. None of the justices have ever bothered to say why the appeals are declined, other than they find the Claims to be undesirable to consider. Graham has nine (9) habeas corpus, and two Petitions for Original Jurisdiction in "The Court". All have been declined on appeal, all Due Process Violations under the 5th Amendment and made applicable to the 14th Amendment.

The Appeal of Right was a total sham, in which no Constitutional Claims were made. The conflict of interest was due to The Public Defender / trial Attorney presented no 6th Amendment or any other Due Process Claims were made for "The Court" to consider, which they would have even if the claims were "Undesirable" for their consideration. The Structurally Altered Appeal was a well thought out attempt to cover up the trial court conspiracy, and it was given to an Appellate Defender from the same office of The Public Defender, which made it a conflict of interest for the Appellate Defender to raise any 6th Amendment or Due Process violations.

The Defendant Graham had no clue about what had transpired in the trial court; he knew nothing about the Doctors' reports that would have probably set him free, and he knew nothing about the other evidence that was never brought up by the defense, and had no idea about how to prove his innocence until he recieved his file from the Public Defenders' Office several months after the trial;  The Police interviews of B.M. and S.R., and the Deposition of Dr. Gladstone.

One of the claims made in The Motion for a New Trial was the undisputable fact that Graham is Hearing impaired and could not hear the testimony at trial, and the court's failure to do anything to accomodate it. An example of this is when B.M. was on the stand giving her testimony, and the County Attorney asked her if Graham was in the room when she was assaulted. Her answer was "Ihink so". her testimony consisted of a lot of I guess so, and I think so. Counsel failed to pursue this on cross.

The interviews The Seabrook Police had with B.M. and S.R. as
the investigation was begun contained several exculpatory state-
ments by both girls that Defense Counsel could have used for the
exoneration of Graham, if Counsel had not been party  to the con-
spiracy to convict by Overt Acts and Omissions. For example; in
the interview with S.R., she described what should have been, if
questioned further, an assault on her by B.M. She also told the
detectives that B.M. told her what they were going to do, and it
was enhanced to make the indictments realistic. The story B.M.
told the Police was very much in line with what S.R. had told
her they would do that night. When The Detectives interviewed B.M.
they asked her What happens if you tell a lie"? B.M. immediately
responded with "They just keep asking you over and over, and over",
so it sounds like B.M. had been prompted as to what she should
say at the trial. Defense counsel should have been prepared for
all The State had prepared for but obviously by their own Admiss-
ion they had no inclination to defend Graham right from the start
of the trial because The County Attorney, and apparently, The
Judge, didn,t want them to. The Doctor (who testified at the trial
was deposed before trial and told The Prosecutor, and the Defense
Attorney's that she was no expert in STD's, however as stated be-
fore, she was allowed to testify about the transmission rate of
HSV, a subject she was not qualified for.

The Habeas Corpus Petition referenced herein Showed Four of
The Superior Court Rules that were ignored, other wise the cons-
spiracy would not have prevailed. That Petition in Merrimack
County Superior Court, Docket #217-2020-CV-253 is hereby submitted
and incorporated by reference to this Claim

As was previously posited, when "The Court" decided to "Further the conspiracy that began in the trial court, "The Court" opened a can of worms for all the Justices that presided over the jurisdiction of the lower courts.  Every Justice that has joined "The Court" since 1996 has had a duty to speak about the egregious way in which Graham's Civil Rights were violated, but apparently have decided join the other Justices in Misfeacance in Office by voting to decline all of Graham's Appeals on The Constitutional Questions raised  in Post-Conviction.

"The Court" in their haste to deny their jurisdiction in The Court, has seriatimly declined all appeals from Graham which make Constitutional Claims that the Superior Courts make regarding absurd rulings to neny Habeas Corpus relief. The denial of relief is so obviously in conflict with "The Rule of Law, in each and every Petition, including the two Petititons for "Original Juris diction". The reluctance of "The Court" to adjudicate the claims made in the last Habeas Petition certainly makes a superb argument for Bias or the appearance of bias. The petition challenged the integrity of "The Court" and the only reason they could come up with for declining the appeal was it was "UNDESIRABLE" for their consideration.

            EVIDENCE TO BE INCORPORATED THROUGH REFERENCE
1.   Interview with B.M. and Seabrook Police
2.   Interview with S.R. and Seabrook Police
3.   Deposition of Dr. Gladstone
4.   The Trial Transcript
New Trial Motion, with Judge Douglas Gray's response

Equitable relief is available, and This Honorable Court should, in the interest of justice use it to restore Graham's right to an "Appeal of Right" in The State Supreme Court Of New Hampshire. As far as the passage of so much time; it is really of no consequence for either party to this suit , because a solution exists that is fair to both parties. This Court should never deny a plaintiff's right to Justice. The Court has in its vast authority, Injunctive power and Reparative Injunction. The entirety of the results of predjudice is the result of The Conflict Of Interest, as explained in The Habeas Corpus Petition. That conflict was never settled by "The Court" and consequently, the mandatory Appeal of Right was a sham, with no Constitutional Questions. Everything raised in Post-Conviction after that one Mandatory Appeal, became Discretionary, and has been declined on every issue. These were issues that should have been raised in The Mandatory Appeal.

The Reparative Injunction would not be predjudicial to The State or Graham, because all that is needed for an appeal is The Trial Transcript, it's all been recorded, and all parties have a copy or can be supplied with one. A Reparative Injunction would take the case back to March of 1996, when Graham was sentenced to prison, because that was when the Appeal Process started. This would give "The Court" the opportunity to Appoint New Counsel, not a State appointed Appellate Defender. It would give Graham the opportunity to meet with the attorney to discuss the Consti-tutional Claims that should be made, and it would not overturn the conviction: it would just insure that Due Process and Equal Protection are more than just mere phrases that apply only to the rich .

## A PLEA FOR EQUITABLE RELIEF

The judge in the state Habeas Court proclaimed the State would be predjudiced by a New Trial, because of the passage of so much time, and "the Court voted once again to decline the appeal. It is true ; the state would be predjudiced, however, Graham did not request a New Trial, he just asked to be rel eased. In light of the ruling in Merrimack County Superior Court, especially due to the facts that were presented, proven, and undisputed, The Plaintiff Graham would suggest  that unless The State can show just cause to prevent it, The Equitable Relief would be available through a Reparative Injunction to restore the right to an Appeal of Right that was sabotaged by a Conflict Of Interest in 1996, which in turn caused the structural alteration of the appeal, and prevented any Constitutional Claims from being raised.

This Honorable court has  been informed with the facts that corroborate the Claims made in habeas corpus, and The Habeas Corpus Judge's opinion. The State will still not be able to present any Substantive aruments because none exist. Therefore, This Honorable Court has a duty to speak in some manner, and the Court has Jurisdiction for 42 USC @1983, and @1985 as well as 18USC @ 1343. Graham has invoked all three so that there can be no doubt about Jurisdiction. Dispositive Material facts are undisputable, "The Court" is well aware of the facts so much so that every Post Conviction appeal has bee declined by "The Court". One or two may have explained as "Judicial Discretion" and dismissed as an abuse of discretion, but, the stack of Declination of Acceptance Orders Graham ˙ has on the record speaks to an entirely different reason.

12

The Petitioner Graham has met his burden of stating a claim for which relief may be granted, and the request for Reparative Injunction will not necessarily over turn his conviction. By returning to The State Supreme Court for a fair and just adjudication on the merits of the claims that would have been raised in The Appeal of Right, The U.S. District Court will have done its' duty to vindicate The U.S. Constitution under the 5th Amendment, and correcting an illegal process that sprung from a "Conspiracy" to deny The Petitioner's Rights to Procedural Due Process. The Supreme Court Of New Hampshire may decide to Further the conspiracy again, but it won't be with "Sound Judicial Discretion. "The Court" will have to, as a matter of law, write an opinion that may be held up to scrutiny and most importantly would make Federal review possible once again, for vindication of Graham's Constitutional Rights. The Petitioner Graham has presented The U.S. District Court with plenty of evidence of State Actors Conspiring to violate Graham's Rights, and an abundance of proof that "The Court" gives tacit approval by Seriatimly Declining all Claims of Constitutional, meritrious issues that enables "The Court" to participate by "Furtherance of the conspiracy". By information and belief, The Statute of Limitations on Conspiracy tolls for Five (5) years from the last Overt Act in Furtherance of the conspiracy.

The Seriatim Declination orders fro the court on Constitututional Claims are all Overt Acts and the last one issued was a well within the time line. is a perfect example of why this Petition is a challenge to Procedural issues in The State.

<u>WHY SHOULD THE U.S. DISTRICT COURT ACCEPT THIS PETITION AND ALLOW</u>
<u>THE PETITIONER GRAHAM TO PROCEED IN HIS QUEST FOR JUSTICE AFTER</u>
<u>SO MANY YEARS HAVE PASSED?</u>

The answer is after all, a Jurisdictional Question, because Graham has been denied Jurisdiction in The State Supreme Court, due to serial declinations of all Constitutional Claims. "The Court" has even gone so far as to deny Jurisdiction in two seperate instances where it was shown with a preponderance of evidence that The Superior Courts in Rockingham, and Coos County had deliberately falsified "The Record".

Graham's first Habeas Corpus In The District Court was dismissed by The Magistrate for failure to exhaust State remedies on one specific issue. Graham had been denied counsel for a New Trial Motion and The Magistrate Judge Muirhead dismissed the petition for that reason. The Judge should have put a stay on the timely petition until Graham could return with the claim being exhausted in State Court. Graham returned to The State Courts and "The Court" dismissed The Appeal from The Superior Court by saying Graham had raised this issue before.

When Graham filed his second petition in The District Court Judge Muirhead dismissed it for violating The AEDPA Statute Of Limitations. Since then, every Petition from Graham has been denied by AEDPA. What we have here is a failure to communicate.

Obviously there are circumstances that exist that make "The State Corrective Process ineffective, and therefore makes it impossible for Graham to get his conviction overturned. Everytime Graham files in State Court "The Court declines the appeal, no matter what the Habeas Court Judge says, and They continue to hide behind the skirts of AEDPA.

14

## CONSTITUTIONAL CHALLENGE TO THE MANNER IN WHICH THE STATE SUPREME
## COURT USES RULE 7(1) TO DENY JURISDICTION.
## AND A CONSTITUTIONAL CHALLENGE TO R.S.A. 632

It must be noted that Rule 7(1) on its face is Constitutionally valid. However the manner in which it is used in some cases isby "The Courts'" own definition of the rule completely contrary to The State, and U.S. Constitution. Begin with the rule itself; for many years there was no (1), it was just Rule 7 and because of a case in 1st circuit in which a prisoner in New Hampshire State Prison was denied a trial transcript for his appeal of right, The Attorney General opined that sometimes The State Supreme Court misuses their own rules. It was shortly after that case in the 1st Circuit that The Court added power of Judicial Discretion to make it Rule 7(1) So now we have a rule promulgated by The Court that allows them to ignore Claims of Constitutional deprivations, simply declining to consider The Constitutional Questions. Declining to consider an appeal of Right is totally unacceptable, was corrected by The 1st Circuit case, however it becomes more incumbent on The Court to decide Constitutional Deprivations in Habeas Corpus Courts in the state, because that is where the Deprivations are most likely to occur. The Appeal from trial, known as The Appeal of Right, is a Mandatory Appeal. That is rule of Law in State and U.S. District Courts. It is the only appeal that is Mandatory, but it is not the only appeals in The State Courts that raise Constitutional Questions. Remember, The Court promulgated the change to Rule 7 to make it inclusive of the courts' ability to exercise "Sound Judicial Discretion" in deciding to Accept or decline an appeal that is not considered to be mandatory.

15

Apparently in New Hampshire "Sound Judicial Discretion is a phrase that is used to allow "The Court" to choose not to speak on Constitutional Questions that "The Court" finds "Undesirable" for their consideration; which is nothing short of "Arbitrary", and "Capricious". The sole purpose of Habeas Corpus is to give the defendant's the opportunity, promulgated by "Due Process" and, Equal Protection" to have a court consider Constitutional Claims thjat were not adjudicated in the Mandatory Appeal of Right.

When Graham filed his Habeas Petition in Merrimack County Superior Court, it follwed up on several past petitions that had raised Constitutional Questions, and had been rejected in The Superior Courts. These rejections were for the most part were claims that should have been made by Direct Appeal, but as previously explained in This Petition and the last petition in The Merrimack County Superior Court there was a "Conflict of Interest" in the appeal that kept any 5'th or 6th Amendement claims from being raised in the appeal of right. So now it becomes The Duty of "The Court" to speak to issues that arise from "Due Process", as no one can deny that Habeas Corpus is Procedurally, Substantive, and required by The State, and U.S. Constitution, intwined by Due Process Rights.  It doesn't take an Einstein to realize that "The Court" has ignored the mandated duty of R.S.A. 490:4 to correct errors and abuses in the lower courts.  What "The Court" does as an Entity is Wanton Misconduct, Wanton Negligence, and Wanton Omissions. There is no provision for "Discretion in R.S.A. 490:4 The discretion factor was promulgated by "The Court" so that it could be used to deny Jurisdiction As previously posited Rule 7(1) is Constitutional on its face but Sometimes the Manner in which it is used is "Unconstitutional."

## CHALLENGE TO THE CONSTITUTIONAL ITY OF R.S.A. 632

R.S.A. 632 deals with the prosecution of Sexual Assault, but the disturbing part of this Statute is found in the first paragraph of the chapter. The Statute is sometimes Unconstitutional in that it states right out of the gate that under this chapter "no corroboration is required of the victims' testimony. In Graham's case, as in many cases, this made it a case of he said, she said. The inherent problem with this is The Police may be exused from doing their duty to investigate the aspects of the crimes that are just allegations, knowing that no corroboration is needed.

When The Seabrook Police came to Graham's house on the morning of Oct. 15, 1994 They told him that he was accused of sexual assault of two girls. When the indictments came down, they were the same for the two girls. This was 1994, a time when D.N.A. evidence was taking over almost all cases of Sexual Assault. The Sea-Brook Police did not even attempt to take samples, did not take the sheets and blankets for testing. When the detective told the accused about the allegations, Graham immediately proclaimed his innocence and The Police said they would like to question him further at the Police Station. Graham told them he would go right then but the detective said they wanted to talk to B.M. first, and wanted to come to the Police Station the following morning, after they had contacted B.M. and had her statement. There was no attempt to retrieve any evidence. The other alleged victim S.R. had given a statement that included a statement that Graham had shown a video to the girls that had people doing disgusting things, and said she believed it was a movie called China Moon. One of detectives noted that when they talked to Graham the movie, China Moon was on the coffee table.

17

Apparently, the detectives were convinced that "China Moon" was a Pornographic Movie, but not knowing it was just a Physological thriller they did no investigation to determine the facts. This eludes to the supposition that The Sexual Assault R.S.A. is used in an Unconstitutional manner because the Police aren't required to investigate properly because they need no corroboration of the alleged victim's testimony. This is demonstrated further by the dictum of The State Supreme Court in the appeal of right. The Original Indictments were for two girls, B.M. and S.R. The indictments were identical for the two girls; same time, same place, and same manner of assaults. However, minutes before the trial started, the indictments pertaing to S.R. were Nol Prossed, apparently because the girls were not telling the same story. S.R. was called as a witness for the prosecution, and she was by all standards an "Eye Witness" to the alleged assaults on B.M. There are a lot of "Howevers" to this case and here we are again. However, when "The" Court considered the appeal of right, "The Court" opined that S.R. could not corroborate any of B.M.'s testimony. This is what is Unconstitutional about R.S.A.632, among other things. An "Eye Witness could not corroborate the alleged victim's testimony, and in fact had told a different story so that The Prosecutor had Nol Prossed the indictments that were identical to the ones that were used to convict Graham. There has to be some accountability for Malicious Prosecution, and it was a Malicious Prosecution because the first examination by a doctor of B.M. stated that there were no signs of any assaults. The only Doctor's report that found any assault was by Dr. Gladstone, who determined that B.M.s Hymen was worn away, again with however, This was a report made on 11-04-1994, and Graham left the state on 10-17-1994. And the initial Report by

18

specifically stated that the hymen was intact, and everthing about the Vagina was normal. Dr. Gladstone was deposed and was question-ed about the obvious contradiction. She said in her deposition that Dr. Thumser had probably not seen the hymen when she did her exam, but, the whole point was she did see it. Gladstone said the way the hymen was worn away was consistent with years of sexual abuse, However this was a question for the jury to decide because, as the court is probably aware, The Hymen is a very thin tissue at such a tender age, but when Estrogen is produced in the body, it makes the Hymen toughen up. It is likely that B.M. had not started pro-ducing Estrogen, because she was only eight years old. The fact is her Hymen was still very thin, and one night of vigorous activity could completely cause it to be worn away. Again, this was a ques-tion for the jury to decide, given the fact that The State didn't do an investigation because R.S.A. 632 relieves them of that duty.

B.M. was asked by The Detectives What happens when you tell a lie? Her answer wasn't I get in trouble, it was "They keep on asking you over and over again." So apparently, When B.M. told the story they wanted to hear they left her alone.

I haven't been able to find any other Statute or Rule that doesn't require corroboration of some sort.     It defies the the defendants' due process rights, and is therefore "Unconstitutional".

This Court must also, to satisfy a quest for justice, consider The statement made by the alleged victim, B.M. at a hearing in 2012, in the trial court where she talked about the trauma of the alleged assaults, and stated that she still remembers the smell of his skin, and the "Birthmark" on the head of his penis. Graham has no birthmark, never has had one, and that statement seems to indicate they got the wrong guy. It is Graham's con-

tention that B.M. made that same statement or one similar to it in
an interview with the Seabrook Police before trial. This is proba-
bly the reason that the defense never got  taped interviews in
discovery even though it is on the record that defnse requested
them. This failur to provide discovery was argued Pro Se in a
State Habeas Corpus, and the County Attorney tried to claim that
there were no tapes. He actually lied to the court, and knew he
was lying because, when Graham produced the Affidavit for The
Arrest Warrant, which specifically stated there wer four inter-
views that were taped, and gave specific dates for all four. He
then told the judge that he had done an investigation of his own
and talked to the Defense Counsel and Defense Counsel told him,
he went to The Police Station and viewed and listened to the tapes
and they were of poor quality and would not have helped the defen-
se.  So knowing the Rockingham County Attorneys Office has diffi-
culty at times in seperating fact from fiction, Graham wrote a
letter to The Seabrook Police and inquired about The Public De-
fender's field trip to the Police Station to listen to and view
the tapes. The Police responed with a letter stating they had no
record of anyone coming there to view any tapes in Graham's case.
Graham never received those tapes; it was just anothere way for
the trial court to "Omitt exculpatory evidence, and further the
Conspiracy to Convict by Overt Acts and Omissions.

## CONCLUSION

    From the facts presented and proven by the record, there is
only one conclusion to be drawn. Melvin Graham was innocent of
the crimes he was convicted of, and The State Of New Hampshire
launched a pernicious prosecution by violating Grahams Civil
Rights through a lack of "Due Process" and "Equal Protection.

### THE RULE OF LAW

According to the rule of law in New Hampshire, when a defendant is found guilty in a criminal trial and alleges  Ineffective Assistance of Counsel in a Pro Se New Trial Motion, and asks for new counsel to be appointed to represent him or her in a evidentiary hearing The State is required to appoint new counsel in accord with the 6th Amendment to the U.S. Constitution, and made applicable to the 14th Amendment. It is considered to be a Rule of Law in New Hampshire. Graham met the criteria for appointment of counsel from the Office Of The Public Defenders, but was by all stretches of the imagination was ineffectively represented by his counsel. Counsels' representation was not only lacking in effort, trial counsel conspired against their client in egregious ways, and then Structurally altered the appeal of right so that no unconstitutional errors would surface, and thereby defeat the conspiracy they had worked so hard to conceal. So The Public Defenders altered the appeal and handed it over to an Appellate Defender to presnt arguments in The State Supreme Court. The Rule Of Law in New Hampshire prohibits an Appellant Defender from raising any Constitutional Claims against a Public Defender. This being said, there was an immediate "Conflict of Interests in Graham's Appeal of Right. These two rules of law discussed herein, play a large part in Due Process and Equal Protection, which in turn is a major contributing factor in Civil Rights Lititgation.

If The State fails to follow The Rule of Law in these two instances, then Habeas Corpus opens up for litigation in The State, and Litigation is welcomed in The State of New Hampshire, Superior Courts in Merrimack and Coos Counties, but not so much in The State Supreme Court.

## PAROLE AS A LIBERTY INTEREST

The Constitutional deprevation, secured by Due Process
and Equal Protection is also imbeded in the context of The Parole
Board requirement that in accord with R.S.A. 632 in order to have
Parole granted to a sex offender or anyone percieved to be a sex
offender, must admit guilt in order to be entered into the S.O.P.

Graham has demonstrated in the pleadings that he was not the
perpetrator of the crimes he was convicted of, but in order to ob-
tain parole, he will have to admit guilt. What The State is pro-
claiming is that it doesn't matter if a defendant is guilty or
not, if convicted by an unconstitutional process, the only way to
Parole is to admit guilt for crimes you didn't commit.

Graham spent some of his time in The Northern Correctional
Facility in Berlin. A sex offender counselr came    to talk to me
about getting into the SOP, and I told him I had no desire to do
that. He asked me why, and I told him I didn't do the things I was
convicted of. He said "Oh your in denial", so I asked him Why did
you rape my daughter?  He indignately replied I never raped your
daughter. So I said "Oh your in denial". That was the last I saw
of him, he said thisconversation is over and left. He had no idea
about who I was or what I had gone through at trial. Not everyone
is guilty, no one should have to admit guilt in order to get fair
treatment from The Board of Parole. I have known people in prison
that admit guilt, do2 or 3 years and get parole, and go out and
commit the same crimes again. S  it isn't about guilt or innocence
after all. It's all about protecting the state from being sued in
court for malicious prosecutions, false imprisonment, and a whole
litany of Civil Rights Complaints.

Under penalties of perjury, I, Melvin C. Graham, do swear that all the claims made herein are true and represent a failed State Corrective Process in Thr State Of New Hampshire. I have mailed a copy of this Petition to The Secretary of State on this date   Melvin C. Graham Pro Se,

2/28/23

Melvin Graham

State of New Hampshire
County of Merrimack

Sharon G Nolin

SHARON G. NOLIN, Notary Public
State of New Hampshire
My Commission Expires Dec. 19, 2023

FILED - USDC -NH
2023 MAR 24 AM10:16

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Graham
    v
State, et al

### Amendment To Petition

After Due consideration, and Sound Pro Se Discretion, The petitioner has in the interest of Judicial economy decided an Amendment is in order. THE PETITIONER ASKS THIS COURT TO ALLOW AN AMENDMENT TO THE PETITION CONCERNING DAMAGES. This is an issue well within the bounds of the jury to decide. Petitioner had intended to rely on a jury verdict to establish the rights taken from him at trial by way of a Reparative Injunction, and then come back to Federal Court to obtain Compensatory and Punitive Damages. However, realizing that the case presented is strong and The State will not have any Substantive Arguments, and the petitioner would be out on the streets waiting on The Courts to vindicate his rights, it has become obvious that an Amendment is in order to include Compensatory, and Punitive Damages, to be determined by the jury after hearing the evidence presented in the petition. It is the petitioners beleif that a jury, after hearing the evidence of the trial court conspiracy, and Furtherance of that conspiracy by The State Supreme Courts' misfeasance in office, and the Exculpatory Medical Evidence The State was aware of and proceeded to trial in a Pernicious Prosecution, a jury may realize that anyone could be convicted of sexual assault and be imprisoned for years because of the two Constitutional challenges made in the petition, that makes it almost impossible to have a conviction overturned in The State of New Hampshire.

The Plaintiff will ask the jury to concider the evidence and award in favor of the Plaintiff, $4,000,000